81 N.J. Super. 206 (1963)
195 A.2d 224
STATE OF NEW JERSEY
v.
VINCENT S. WAGNER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Mercer County Court, Law Division.
Decided November 7, 1963.
*208 Mr. Philip B. Papier, Jr. for the State of New Jersey.
Messrs. Abbotts & Abbotts for defendant-appellant (Mr. William Abbotts, appearing)
BARLOW, J.C.C.
This is an appeal from the judgment of the Municipal Court of the Township of Ewing, in which defendant Vincent S. Wagner was found guilty of a violation of the Township Zoning Ordinance.
On June 1, 1960 defendant purchased a residential property known as 1905 Pennington Road, Ewing Township, Mercer County, New Jersey. The property consists of a large house which had previously been converted into two apartments. Prior to defendant's purchase of the home, and for some time prior to 1950, the then owner of the property had lived in one side or one apartment of the house and leased the other unit to another family. Apparently, at least one of the families to which the second unit was rented had, from time to time, sublet part of the premises to one or more persons.
After defendant purchased the property, he rented one apartment to his son-in-law and daughter, and the other unit to a group of 12 girls who were college students at nearby Trenton State Teachers College, for the school year 1962-1963. An oral lease was made with each of the student tenants, providing for a weekly or monthly rental for the period constituting the school year.
Both units, or apartments, provide complete living quarters, both containing separate kitchens and bathrooms.
Effective September 8, 1950, Ewing Township adopted a comprehensive zoning ordinance, which thereafter was supplemented and amended from time to time.
The premises here in question are situate within a "Residence `A-1' District," and in which the ordinance prohibits structures other than
"* * * 1. A single family dwelling and its customary accessory buildings and uses. 2. A church, public school and a public park or *209 playground. 3. Other buildings, structures and uses as provided by paragraphs (a), * * * of Section 11."
Section 11, referred to above, is entitled "Exceptions and Special Provisions," and subsection (a) provides as follows:
"Special Uses Permitted. After public notice and hearing * * *, the Board of Adjustment as hereinafter created may authorize the issuance of a permit for any of the following buildings and uses: 1. * * * (6) A rooming or boarding house. * * *"
A "rooming or boarding house" is defined under section 3 of the zoning ordinance as "A dwelling other than a hotel, wherein more than three people are sheltered or fed for profit." A "hotel" is defined as "a public inn, in which there are more than 6 sleeping rooms, without provision for cooking in any individual room or suite."
By reason of his rental of part of the premises to the 12 young ladies, the defendant was found guilty in municipal court of violating the township zoning ordinance in that he was maintaining a boarding house without having first obtained the necessary permit therefor from the board of adjustment, as required by section 11.
It is conceded that on September 8, 1950, when the ordinance was adopted, and thereafter, the use of the premises by defendant's predecessors in title was a nonconforming use, which, it is agreed, would not be affected by the passage of the ordinance so long as the use was not changed or extended beyond the limits prescribed by the ordinance itself. In this connection, the ordinance provides as follows:

"(j) Non-Conforming Uses.

1. Continuation Thereof:
All buildings, structures and the uses not conforming to the regulations of the district in which they are located, at the time of this enactment, shall be known and regarded as `non-conforming.'
A non-conforming building or use may be continued and may be changed to another non-conforming use of the same or a more restricted classification, but no additions or extensions of such building or use shall be made, exceeding: (1) 25 percent of the occupied floor area: or (2) 25 percent of the cubical contents of the building or *210 buildings as existing at the time of this enactment; or (3) 25 percent of the service capacity of a use conducted all or partially in the open; and provided further, that subsequent to such extension or addition to a non-conforming building or use, there shall be no further additions or extensions except in accordance with the regulations of the district in which such building or use is located."
Whatever the language of the ordinance, it is clear that nonconforming uses may be continued as of right, although they may not be enlarged or extended as a matter of right. Grundlehner v. Dangler, 29 N.J. 256, 263 (1959); R.S. 40:55-48. It is, however, the intent of the law that the extension of nonconforming uses be restricted. Gross v. Allen, 37 N.J. Super. 262, 272 (App. Div. 1955). In order to retain the protection of the law, the use must retain substantially the same character and the same kind of use to which the premises were put at the time of the adoption of the zoning ordinance. Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956); Kensington Realty, &c., Corp. v. Jersey City, 118 N.J.L. 114 (Sup. Ct. 1937), affirmed 119 N.J.L. 338 (E. & A. 1938). The nonconforming use must be a continuation of the same use and not some other kind of use. The test is merely that the nonconforming use must be "substantially" the same before and after the passage of the zoning ordinance. Each zoning case necessarily stands upon its own facts. National Lumber Products Co. v. Ponzio, 133 N.J.L. 95 (Sup. Ct. 1945).
Moreover, the rule of law which prohibits a substantial extension or enlargement of the original use does not forbid an increase in the amount or intensity of use within the same area, so that such a nonconforming use may not only be continued but, also, may be increased in volume and intensity. 101 C.J.S. Zoning, ¶ 193, p. 955. Neither is a mere increase in the volume of business conducted on premises constituting a nonconforming use normally considered to be an improper expansion of such a nonconforming use. Hantman v. Randolph Twp., 58 N.J. Super. 127, 136 (App. Div. 1959); Protokowicz v. Lesofski, 69 N.J. Super. 436, 443 (Ch. Div. 1961).
*211 The question here, simply stated, is whether defendant's leasing of one-half of the premises to 12 college students represented an improper enlargement or extension of the permissible nonconforming use. For clearly, if the use is not an unlawful extension of the use to which the property was put at the time of the passage of the zoning ordinance, then it remains proper, and no provision of the ordinance with respect to the necessity of requiring a permit, or authorization, to operate a boarding house may modify, restrict or qualify defendant's current use of the premises in question.
The pre-existing and nonconforming use of defendant's premises was a residential use, containing, as it did, two units, however described, in one structure, under one roof, each being self-contained, with separate kitchens and baths. Both units had been leased, from time to time, to families or others for residential purposes.
The State argues, simply, that defendant leased one unit of his premises to 12 girls and that, by the terms of the zoning ordinance, defendant thereby created a boarding or rooming house, since "more than three people" were "sheltered * * * for profit."
The deficiency in the State's argument is that it overlooks the fact that the zoning ordinance, or any definition contained therein, has no application to, nor control of, a nonconforming use. It makes no difference that defendant can be said to operate a rooming or a boarding house within the definition of the ordinance, if such use by defendant does not represent a substantial change from the nonconforming use of the premises permitted to defendant by law.
Clearly, defendant could, with complete propriety, have leased the space in question to "more than three persons." The property had, in fact, been devoted to such use, and to occupancy by more than three persons, both before and after the passage of the zoning ordinance.
The use here attacked by the State is not substantially different than the pre-existing, nonconforming use of the property. Absent an affirmative showing by the State that the *212 occupancy of the premises by the young ladies could be distinguished from the occupancy of the various previous tenants, in that the young ladies' occupancy created special or different problems in this residential community, and which problems could be said to be violative of and inconsistent with the design and intention of the zoning ordinance, the only valid distinction between the permitted use and the use complained of is in the number of tenants occupying the premises.
A mere increase in number of tenants, even though a considerable increase, not requiring any alteration or physical enlargement or change of the premises to accommodate a larger number of tenants, is only an increase in the "intensity" or "degree" of use and cannot be said to represent a substantial, and thereby unlawful, enlargement or extension of defendant's nonconforming use.
Accordingly, defendant is adjudged not guilty.