TOWN OF MARBLEHEAD *vs.* HIEMAN M. ROSENTHAL &
another.

Essex.   November 9, 1943. — April 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Zoning.   Marblehead.*

A zoning by-law of Marblehead is not invalid as unreasonable in that
that part of the town which comprises the old, built-up, seaport village
and which is hardly susceptible of restriction is left unrestricted while
the other parts of the town, different from that village in almost every
respect important in zoning, are subjected to restrictions.

The mere fact that, under a zoning by-law of Marblehead small areas in
different parts of the town are zoned as business districts in the midst
of or near to areas zoned as residential districts, it not being shown
that there was not good reason for such an arrangement, did not make
the validity of the whole by-law open to successful attack by an owner
of residential land located on the same street as one of such business
districts, who did not prove that he was damaged by such zoning
arrangement and whose complaint apparently rested only on the
ground that his property was not likewise zoned as a busine   district.

A use, existing at the time of adoption of a zoning by-law of a town, of
a single store for a small-scale neighborhood tailor shop in which most
of the work was done by hand and there was little cleansing of clothes
was different in quality from a subsequent use of the combined· space
of that and two adjacent stores for a fully mechanized dry cleansing
establishment for which parcels were gathered by trucks from the
town and from neighboring communities and in which large quan-
tities of "solvents" were used and tailoring was of little importance;
and the later use was not an "existing use" protected from the appli-
cation of the zoning by-law by G. L. (Ter. Ed.) c. 40, § 26, as appear-
ing in St. 1933, c. 269, § 1.

BILL IN EQUITY, filed in the Superior Court on October
14, 1942.

After hearing by *Brogna,* J., a final decree was entered as
follows: "1. That the zoning by-law adopted by the town
of Marblehead on March 26, 1928, complies with statutory
requirements and is valid.   2. That the defendants in the
use of . . . [certain] premises in the town of Marblehead
. . . and in permitting the use of said premises for the

cleansing of clothing by machinery, have changed the use of said premises from the use that existed at the time the zoning by-law of the town of Marblehead was duly adopted, the said premises being part of a district zoned as a single residence district. 3. That the defendants and each of them, their servants and agents be and hereby are permanently enjoined from making use of the said premises or permitting the use of said premises for the cleansing of clothing by the use of machinery operated by power. 4. That the defendants and each of them, their servants and agents be and hereby are permanently enjoined from making use of the said premises or permitting the use of said premises in violation of the provisions of the zoning by-law of the town of Marblehead, except for such uses as existed at the time of the adoption of the said zoning law or other uses of the same general character."

The defendants appealed. The evidence was reported and the judge made a report of material facts.

The case was argued at the bar in November, 1943, before *Field*, C.J., *Lummus*, *Qua*, & *Cox*, JJ., and after the retirement of *Donahue* & *Cox*, JJ., was submitted on briefs to *Dolan* & *Wilkins*, JJ.

*P. Nichols*, for the defendants.

*R. H. Trefry*, for the plaintiff.

Qua, J. The defendant Rosenthal is the occupant of three adjoining stores that have been converted into one by the removal of partitions. The three stores are located in a block of ten stores owned by the defendant Kemelman and occupied by a number of persons for different kinds of business. The plaintiff alleges a violation of its zoning by-law, which went into effect in 1928. The block is situated in a single residence district from which business is excluded. The defendants contend that the zoning by-law is invalid as to them and also rely upon an "existing use" in 1928.

The defendants' attack upon the by-law cannot succeed upon any of the grounds taken. It was plainly within the power of the town to leave its oldest built up section in an unrestricted district. Nothing in the statute (now designated in its amended form as G. L. [Ter. Ed.] c. 40, §§ 25–

30B; see St. 1933, c. 269, § 1) or in common sense requires a municipality to impose restrictions upon all of its territory as a condition of the exercise of its zoning powers. The defendants concede that it is a question of reasonableness. The evidence makes it plain that the district left unrestricted, being the old seaport village built on rocky ledges of different heights, with buildings of all kinds devoted to every sort of use crowded together in irregular confusion and reached by narrow streets winding among them, differs from the restricted portions of the town in almost every respect important in zoning and could in itself scarcely be made the subject of reasonable restrictions. There was nothing unreasonable, arbitrary, or capricious in not restricting the old portion of the town, when the other portions were restricted.

Complaint is also made that the districts zoned for business consist of ten or eleven small areas widely scattered in different parts of the town. It is contended that this is "spot zoning," and that it renders the whole by-law invalid. With the possible exception of one area located about six hundred feet from the defendants' premises and on the same street, the evidence fails to disclose with any degree of certainty the conditions existing at these places and does not prove the absence of good reasons for separating them from the surrounding territory. The invalidity of "spot zoning" depends upon more than the size of the "spot." Small business areas are often a convenience and sometimes a necessity in or near large residential areas. It does not appear that there was "a singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot." *Whittemore* v. *Building Inspector of Falmouth*, 313 Mass. 248, 249. The case is different from *Leahy* v. *Inspector of Buildings of New Bedford*, 308 Mass. 128, and *Smith* v. *Board of Appeals of Salem*, 313 Mass. 622, cited by the defendants. Moreover, if a zoning by-law covering a town or a large region is, in general, in accordance with the statute and reasonable in character, it cannot be overthrown in its entirety, even if somewhere

in it can be discovered an instance or two of "spot zoning" which might perhaps be successfully attacked by a person who could show that his particular interests had been adversely affected by them. See *Goldstein* v. *Conner,* 212 Mass. 57; *Commonwealth* v. *Atlas,* 244 Mass. 78; *Ahmedjian* v. *Erickson,* 281 Mass. 6, 11. There is no proof that the defendants were damaged by the zoning for business of small areas in other parts of the town. The defendants' complaint that a tract of land on their street was unlawfully zoned for business in the midst of a residential area is not based on the contention that they suffered any actual measurable injury by this. In the final analysis it seems to rest only on the untenable ground that they were not accorded a similar special exemption. *Rowland* v. *Racine,* 223 Wis. 488, 493.

The defendants seek the shelter of an "existing use" at the time of the adoption of the by-law. G. L. (Ter. Ed.) c. 40, § 26, as appearing in St. 1933, c. 269, § 1. See the former G. L. (Ter. Ed.) c. 40, § 29. Briefly the pertinent facts, as disclosed by the evidence, are these: In 1928, when the by-law was enacted, the defendant Rosenthal occupied a single store. He there operated on a small scale the business of a tailor and furrier and took in clothes to be cleaned. Three quarters of the cleaning were sent out to be done by cleansers elsewhere. Some sponging and cleaning were done by hand in the store, and "maybe a little energine sometimes" was used. Rosenthal had no equipment for so called dry cleaning as usually practised, and did none. Steam pressing was done at the store by foot power. A washing machine similar to those found in homes and employing only water as a washing fluid was used on a few garments. Members of Rosenthal's family and two other employees did the work. At the present time Rosenthal occupies the combined space of three stores. He has complete mechanical equipment for a dry cleaning establishment, in which he uses so called "solvents" as the cleansing fluid. He buys these in fifty gallon drums and has storage capacity for three hundred gallons. He no longer sends out work to be dry cleaned but does it himself on the premises and gathers

it in by means of trucks from Marblehead and neighboring towns and from the city of Lynn where he maintains a "store." He now employs sixteen or seventeen people. He still employs a tailor and makes repairs and a "very few" new suits, "probably" one a month.

We cannot say that the judge was plainly wrong in finding that the present use of the premises is not the same as the use made of them in 1928. A mere increase in the amount of business done, even a great increase, would not work a change in use. *Cochran* v. *Roemer*, 287 Mass. 500, 508. *Building Commissioner of Medford* v. *McGrath*, 312 Mass. 461. But from evidence which the judge could believe he could find that in 1928 the defendant Rosenthal operated a neighborhood "tailor" shop of a familiar type in which light hand labor played the principal part, and the effect of which upon the neighborhood was practically the same as that of a retail store, but that now the tailoring business has become of comparatively trifling importance, and that Rosenthal is really operating a fully mechanized industrial establishment the effect of which upon the neighborhood is practically the same as that of a factory. For zoning purposes we think this is a difference in quality and not merely in degree. *Lexington* v. *Bean*, 272 Mass. 547, 552–553. Compare *Cochran* v. *Roemer*, 287 Mass. 500, 507–508.

The third paragraph of the final decree is so phrased that it might be construed to prevent occupants of the stores from using an ordinary electrically operated washing machine for washing their own clothes. The wording of this paragraph should be so changed as to forbid only the carrying on of the business of dry cleaning by power driven machinery.

*Final decree as modified affirmed.*