EDITH HINVES *vs.* COMMISSIONER OF PUBLIC WORKS OF
FALL RIVER & another.

Bristol.    January 6, 1961. — February 9, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK,
& SPIEGEL, JJ.

*Zoning.   Mandamus.*

Mandamus lay to compel the appropriate officer of a city to enforce its
zoning ordinance with respect to certain premises allegedly being used
for a purpose in violation of the ordinance where there had been no
order or decision by the officer as to such use affording the petitioner for
the writ a remedy by appeal to the zoning board of appeals.   [57]

A use of a building on premises in a single residence zoning district of a
city, commenced after the adoption of its zoning ordinance, for a
"catering service and delicacy shoppe" where various foods were cooked
and prepared for sale there or for delivery to customers was different
in kind from and not a continuation of a former use of the building
as a grocery store antedating the adoption of the ordinance, and was
not protected as a preëxisting nonconforming use against a prohibition
in the ordinance of use of premises in a single residence district for a
"commercial purpose."   [57]

PETITION for a writ of mandamus filed in the Superior
Court on November 7, 1958.

The case was heard by *Forte, J.*

*Thomas F. McGuire,* (*Peter G. Collias* with him,) for the
intervener Esther Minkin.

*Francis T. Meagher,* for the petitioner.

*John T. Farrell, Jr.,* Assistant Corporation Counsel, for
the respondent, submitted a brief.

SPIEGEL, J.    This is an appeal, under G. L. c. 213, § 1D,
from the order of the Superior Court dated December 24,
1959, that a writ of mandamus issue, as prayed for, di-
recting the Commissioner of Public Works of Fall River
to enforce the zoning ordinance of that city.   The petitioner
alleged that the building abutting her residence and owned
by the intervener, Esther Minkin, was being used for the

purposes of a "catering service" in violation of the ordinance designating the area as a "single residence district." The intervener and the Commissioner of Public Works answered that the building is being used for a purpose which continues a nonconforming use preëxistent to the ordinance (i.e. a grocery store).

The case was referred to an auditor whose findings of fact were not to be final. The auditor found that sometime in 1925 a retail store building was constructed upon the premises in controversy. On August 1, 1927, at which date the city of Fall River adopted a zoning ordinance which designated the area in which the building is located as a single residence district, the building in question was being used in the operation of a grocery store. Article II, § 12, of the zoning ordinance provides that "In the single residence districts . . . no premises shall be used for (A) Any . . . commercial purpose . . . ." Article I, § 5, of the zoning ordinance states, "This chapter shall not apply to existing buildings or structures, nor to the existing use of any building or structure, but it shall apply to any alteration of a building or structure to provide for a purpose, or in a manner, substantially different from the use to which it was put before the alteration." This obviously provides for the continuance of nonconforming buildings, structures and uses existing at the time of the effective date of the zoning ordinance. So far as its pertinency to the instant case is concerned the zoning ordinance has not been changed. From the time of the passing of the zoning ordinance until July, 1958, the building continued to be operated as a grocery store. This, of course, was a nonconforming use, but a permissible one. After the intervener purchased the premises, in the spring of 1958, she terminated the tenancy of the then occupant who had been operating a grocery store. The tenant vacated the premises in or about July, 1958.

Mrs. Minkin, the intervener, then made the following repairs and changes: the electric wiring was repaired, a partition was restored, in place of two electric meters a

single meter was installed, a stove was installed, one of two walk-in coolers was replaced, a sink, refrigerator and display cases were moved in, the outside of the building was painted, the roof was repaired, and wooden steps were replaced with concrete stairs.

In the October 1, 1958, issue of the Fall River Herald News, a newspaper published and circulated in Fall River, the intervener advertised a grand opening on Thursday, October 2, 1958, of the "Esther Minkin Kosher Catering Service and Delicacy Shoppe [at] 654 Weetamoe Street."

When the intervener opened for business she offered for sale, other than the ordinary and usual groceries, meat pies, ground meat and rice rolled in cabbage leaves, potato salad, cole slaw, chopped liver, fish cakes, cooked meat rolled in dough, fried rice, and assorted pastries. All these were cooked and prepared on the premises. Orders might be sold on the premises or delivered to houses or parties.

At or about the time the intervener opened for business, the petitioner delivered a petition, signed by thirty-five neighbors, to the corporation counsel for the city objecting to the intervener conducting "a restaurant and catering establishment." This petition was later returned to her counsel without any information as to its disposition. Subsequently, on October 20, 1958, she filed a second petition, which had been prepared by her attorney, with the Building Commissioner advising him that a violation of the zoning ordinance of the city of Fall River existed and requesting him to take action to restrain the violation. The Building Commissioner assigned a subordinate to investigate the matter and after he received an oral report from the subordinate he took no action because he was of the opinion that no violation of the zoning ordinance was taking place or contemplated. The petitioner was never notified relative to the decision of the Building Commissioner and so she assumed that he had denied her petition.

The auditor in effect found that the present case was one of a continuing nonconforming use. The trial judge ordered the writ of mandamus to issue as prayed for.

The petitioner sought a proper remedy in a writ of mandamus since "no writing exists to establish the content of any 'order or decision' from which the petitioner . . . might have appealed under the . . . [Fall River ordinance] or under G. L. c. 40A, § 13." *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 190.

Article II, § 12, of the Fall River zoning ordinance states that premises in a single residence district cannot be used for any commercial purpose. Clearly a catering service is a commercial purpose. This restriction does not apply to the use of a building existing prior to passage of the zoning ordinance. The use of this building which existed prior to the passage of the zoning ordinance was that of a grocery store. It may continue to be used as a grocery store. However, the intervener is presently using the building for the cooking, preparing and sale of certain foodstuffs. The auditor found that it was just "part of the evolution of the retail grocery business which has taken place in the last decade." The judge in the Superior Court quite obviously did not agree with this conclusion of the auditor. The preparation of foods as described in the auditor's report and the conducting of a catering service constitute a use different from the operation of a grocery store. Presently, in addition to the sale of some of the usual grocery items there is the preparation of food with its accompanying odors and the necessary disposal of refuse. "For zoning purposes we think . . . [there] is a difference in quality and not merely in degree" between the operation of a grocery store and this "catering service." *Marblehead* v. *Rosenthal,* 316 Mass. 124, 128.

There was no error.

*Order affirmed.*